**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

SPECTRANET TECHNOLOGIES LLC,

Plaintiff,

v.

IMC-CHICAGO, LLC d/b/a IMC TRADING; IMC AMERICAS, INC.; IMC GLOBAL HOLDINGS LLC; RCA TELECOM LLC; and TOGGLE COMMUNICATIONS LLC,

Defendants.

Case No. 1:26-cv-05838

Hon. Andrea R. Wood

**HEARING REQUESTED**

SPECTRANET TECHNOLOGIES LLC,

Plaintiff,

v.

OPTIVER SERVICES B.V. and COUNTY INFORMATION SERVICES, LLC,

Defendants.

Case No. 1:26-cv-05857

Hon. Andrea R. Wood

**HEARING REQUESTED**

SPECTRANET TECHNOLOGIES LLC,

Plaintiff,

v.

JUMP FINANCIAL, LLC; JUMP TRADING HOLDINGS, LLC; JUMP TRADING, LLC; WORLD CLASS WIRELESS, LLC; VIRTU FINANCIAL, INC.; NEW LINE NETWORKS LLC; and 10BAND LLC,

Defendants.

Case No. 1:26-cv-05866

Hon. Andrea R. Wood

**HEARING REQUESTED**

SPECTRANET TECHNOLOGIES LLC,

Plaintiff,

v.

RAFT TECHNOLOGIES LTD and 3DB COMMUNICATION INC.,

Defendants.

Case No. 1:26-cv-05870

Hon. Andrea R. Wood

**HEARING REQUESTED**

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION TO STAY DISCOVERY**

## TABLE OF CONTENTS

**Page**


I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. The Three-Factor Test Continues to Weigh in Favor of Granting a Stay .......... 2

B. Dispositive Motions to Dismiss Warrant Staying a Case .......... 2

C. SpectraNet Will Not Be Unduly Prejudiced .......... 4

1. The Nature and Posture of the Case Demonstrate That There Is No Prejudice in a Temporary Stay .......... 4

2. SpectraNet Identifies Nothing but Generic Prejudice .......... 5

D. SpectraNet's Belated Suggestion That It Has Been and Will Be Tactically Disadvantaged by a Stay (or Extension of Deadlines) Is Baseless and Self-Serving .......... 7

E. A Stay Will Simplify the Issues and Streamline Trial .......... 9

F. A Stay Will Reduce the Burden of Litigation on the Parties and the Court .......... 11

III. CONCLUSION .......... 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AIP Acquisition LLC v. Level 3 Commc'ns, LLC*,
No. 1:12-cv-00617, 2014 WL 12642000 (D. Del. Jan. 9, 2014) ....5

*Atos, LLC v. Allstate Ins. Co.*,
No. 1:20-cv-06224, Dkt. 47 (N.D. Ill. Sep. 1, 2021) ....3, 12

*Bilal v. Wolf*,
No. 1:06-cv-06978, 2007 WL 1687253 (N.D. Ill. June 6, 2007)....3

*Bilski v. Kappos*,
561 U.S. 593 (2010)....3, 10

*Buffalo Pats., LLC v. Motorola Mobility LLC*,
No. 1:22-cv-00621, 2022 WL 22917889 (N.D. Ill. Sep. 16, 2022)....2, 9, 10

*Diatek Licensing LLC v. Estrella Media, Inc.*,
No. 1:22-cv-03508, 2022 WL 5108090 (S.D.N.Y. Oct. 4, 2022)....5, 6, 11

*Gamon Plus, Inc. v. Campbell Soup Co.*,
No. 1:15-cv-08940, 2021 WL 9909704 (N.D. Ill. June 8, 2021)....6, 7

*Genetic Techs. Ltd. v. Merial LLC*,
818 F.3d 1369 (Fed. Cir. 2016)....3

*GoSecure, Inc. v. CrowdStrike, Inc.*,
No. 1:24-cv-00526, 2024 WL 5274526 (W.D. Tex. Sep. 10, 2024) ....3

*Gray v. First Winthrop Corp.*,
133 F.R.D. 39 (N.D. Cal. 1990)....3, 11

*Harper v. Cent. Wire, Inc.*,
No. 3:19-cv-50287, 2020 WL 5230746 (N.D. Ill. Sep. 2, 2020)....2, 10, 12

*Jedi Techs., Inc. v. Spark Networks, Inc.*,
No. 1:16-cv-01055, 2017 WL 3315279 (D. Del. Aug. 3, 2017)....3

*Kaavo Inc. v. Cognizant Tech. Sols. Corp.*,
No. 1:14-cv-01192, 2015 WL 1737476 (D. Del. Apr. 9, 2015) ....10

*Mantissa Corp. v. Old Second Bancorp, Inc.*,
No. 1:17-cv-09175, 2018 WL 3059604 (N.D. Ill. June 20, 2018)....11

*Nat'l Police Ass'n, Inc. v. Gannett Co.*,
No. 1:21-cv-01116, 2021 WL 5364207 (S.D. Ind. Oct. 25, 2021)....6

*Norsworthy v. Felix*,
No. 1:23-cv-01151, 2025 WL 1839919 (E.D. Cal. July 3, 2025)....12

*Puget BioVentures, LLC v. DePuy Orthopaedics, Inc.*,
No. 3:10-cv-00463, Dkt. 118 (N.D. Ind. Aug. 14, 2017)....5

*Richards v. Fashion Nova, LLC*,
807 F. Supp. 3d 861 (S.D. Ind. 2025)....5, 10

*Tamburo v. Dworkin*,
No. 1:04-cv-03317, 2010 WL 4867346 (N.D. Ill. Nov. 17, 2010)....2

*Turner v. Pleasant*,
663 F.3d 770 (5th Cir. 2011)....3

*Ultramercial, Inc. v. Hulu, LLC*,
772 F.3d 709 (Fed. Cir. 2014)....10

*Uniloc USA, Inc. v. Exclusive Grp. LLC*,
No. 1:17-cv-03962, 2018 WL 11229418 (S.D. Ind. Aug. 29, 2018)....4

*VirtualAgility Inc. v. Salesforce.com, Inc.*,
759 F.3d 1307 (Fed. Cir. 2014)....5, 10

*YETI Coolers, LLC v. Magnum Solace, LLC*,
No. 1:16-cv-00663, 2016 WL 10571903 (W.D. Tex. Oct. 19, 2016)....2, 3

**Statutes & Rules**

35 U.S.C. § 101.... *passim*

Fed. R. Civ. P. 26....4, 9

Fed. R. Civ. P. 83....9

Defendants respectfully submit this reply memorandum in support of their motion to stay discovery. Dkt. 43. As discussed below, SpectraNet's opposition brief (Dkt. 50) ("Stay Opp.") further confirms that this Court can and should stay discovery while the parties brief and the Court considers Defendants' motion to dismiss SpectraNet's Complaint, with prejudice, pursuant to 35 U.S.C. § 101.

## I. INTRODUCTION

All three factors favor staying this case pending Defendants' potentially dispositive motion to dismiss. SpectraNet identifies no prejudice beyond the delay inherent in every stay. These cases are in their infancy, and SpectraNet does not compete with Defendants, practice the asserted patents, or otherwise allege irreparable harm, nor dispute that money damages would be available to compensate for alleged ongoing infringement. Its concerns about lost evidence are speculative and undercut by its own yearslong delay in filing suit. If granted, Defendants' motion to dismiss would resolve all four cases in a single ruling, and even a partial grant would narrow them significantly. Absent a stay, Defendants will bear the overwhelming share of costly disclosures, contentions, and discovery, including into their confidential hardware architecture, source code, and strategies, before the Court decides whether the asserted patents claim patent-eligible subject matter.

SpectraNet's baseless attempt to have the Court prejudge how it will rule on Defendants' motion to dismiss as part of its analysis here is simply a request that the Court graft a "likelihood of success" factor into the stay analysis, and therefore apply the wrong legal framework. Although Defendants believe that the Court will grant their motion, the Court is not tasked with doing that in the context of a stay and without the benefit of full briefing.

Accordingly, the Court should grant Defendants' motion to stay discovery.

## II. ARGUMENT

### A. The Three-Factor Test Continues to Weigh in Favor of Granting a Stay

All three stay factors continue to favor a stay here: a stay (i) will not unduly prejudice or tactically disadvantage SpectraNet, (ii) will simplify the issues in question and streamline the trial, and (iii) will reduce the burden of litigation on the parties and on the Court. *See Buffalo Pats., LLC v. Motorola Mobility LLC*, No. 1:22-cv-00621, 2022 WL 22917889, at *1 (N.D. Ill. Sep. 16, 2022). SpectraNet does not dispute that this three-factor test is correct, but spends much of its opposition brief insisting that the pendency of a motion to dismiss is insufficient, *without more*, to demonstrate good cause for a stay. Stay Opp. 3–5. However, unlike a motion to dismiss based on the sufficiency of the pleadings, Defendants' motion would, if granted, resolve all four cases on a threshold issue, patent eligibility. SpectraNet's digression aside, Defendants have applied the three-factor test, and each factor supports the requested stay.

### B. Dispositive Motions to Dismiss Warrant Staying a Case

This case involves a dispositive Rule 12(b)(6) motion based on whether the patents asserted by SpectraNet are eligible subject matter under 35 U.S.C. § 101; if they are ineligible, there are no claims that can be asserted by SpectraNet based on these patents. SpectraNet's argument that a stay pending a motion to dismiss is "almost never wise" (Stay Opp. 3–5) confuses dispositive motions to dismiss the allegations in the Complaint as a matter of law—such as challenging patent eligibility under *Alice*—with a motion to dismiss challenging the sufficiency of a complaint's factual allegations under *Twombly*. As SpectraNet's cited authorities suggest, these latter cases less frequently justify a stay of discovery. *See Harper v. Cent. Wire, Inc.*, No. 3:19-cv-50287, 2020 WL 5230746, at *1 (N.D. Ill. Sep. 2, 2020) (denying stay pending motion to dismiss based on sufficiency of pleadings in personal injury case); *Tamburo v. Dworkin*, No. 1:04-cv-03317, 2010 WL 4867346, at *1–2 (N.D. Ill. Nov. 17, 2010) (same in an antitrust case); *YETI Coolers,*

*LLC v. Magnum Solace, LLC*, No. 1:16-cv-00663, 2016 WL 10571903, at *1 (W.D. Tex. Oct. 19, 2016) (same in a trade dress and unfair competition case); *Gray v. First Winthrop Corp.*, 133 F.R.D. 39, 40 (N.D. Cal. 1990) (same in a securities class action).[1] Rather, courts in this district have repeatedly "allowed stays in the face of a Rule 12(b)(6) challenge," especially "where the motion to dismiss can resolve the case—at least as to the moving party or where the issue is a threshold one." *Bilal v. Wolf*, No. 1:06-cv-06978, 2007 WL 1687253, at *1 (N.D. Ill. June 6, 2007).

Here, Defendants challenge the asserted patents under *Alice*, which is a "threshold" issue. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). The Federal Circuit has "repeatedly recognized that in many cases it is possible and proper to determine patent eligibility under 35 U.S.C. § 101 on a Rule 12(b)(6) motion." *Genetic Techs. Ltd. v. Merial LLC*, 818 F.3d 1369, 1373–74 (Fed. Cir. 2016). "[I]t is not uncommon for courts to rule on § 101 motions at the pleading stage." *Jedi Techs., Inc. v. Spark Networks, Inc.*, No. 1:16-cv-01055, 2017 WL 3315279, at *6 (D. Del. Aug. 3, 2017) (collecting cases). Indeed, this Court granted a stay pending a motion to dismiss for patent ineligibility in *Atos, LLC v. Allstate Ins. Co.*, No. 1:20-cv-06224, Dkt. 47 (N.D. Ill. Sep. 1, 2021). The lack of patent-eligible subject matter here is based on the patents themselves rather than a deficiency in the Complaint's factual allegations. SpectraNet's attempt to distinguish the Court's decision in *Atos* because there were also unrelated, non-patent claims being challenged on *Twombly* grounds, Stay Opp. 5, only bolsters Defendants' point—unlike in *Atos*, Defendants' motion would dispose of the entire case. And while the Defendants each have *separately* moved to dismiss under *Twombly* with respect to SpectraNet's infringement claims—*e.g.*, the inducement

[1] SpectraNet's lone cited case that dealt with a legal challenge to the allegations is non-binding, remains uncited by any court, and relies exclusively on authority addressing *Twombly*-based motions. *See GoSecure, Inc. v. CrowdStrike, Inc.*, No. 1:24-cv-00526, 2024 WL 5274526, at *1 (W.D. Tex. Sep. 10, 2024) (quoting *Turner v. Pleasant*, 663 F.3d 770 (5th Cir. 2011); *YETI Coolers*, 2016 WL 10571903).

and willfulness claims—Defendants have *not* asked the Court to stay discovery while considering those separate motions, if the Court needs to reach them at all.

### C. SpectraNet Will Not Be Unduly Prejudiced

#### 1. The Nature and Posture of the Case Demonstrate That There Is No Prejudice in a Temporary Stay

Both the nature and procedural posture of the case support a temporary stay. SpectraNet does not dispute that these cases are in their infancy. Nor could it. Nothing has happened. No case management conference has occurred, no case schedule has been entered, no discovery has been taken,[2] and SpectraNet has not moved, and has now confirmed that it does not intend to move, for a preliminary injunction, Stay Opp. 7. There are no sunk costs or ongoing work or efforts by the Court or the parties that might go to waste by entry of a stay.

Moreover, SpectraNet essentially concedes that it is not Defendants' competitor and does not practice any of the claims of the asserted patents. Stay Opp. 6. There is no prejudice to SpectraNet from staying this case. *See Uniloc USA, Inc. v. Exclusive Grp. LLC*, No. 1:17-cv-03962, 2018 WL 11229418, at *2 (S.D. Ind. Aug. 29, 2018) ("Several courts have found that a non-practicing patentee would not be unduly prejudiced in similar circumstances."). This should end the inquiry.

These cases are about money. The sole inventor, Jeffrey Adams, and his company, SpectraNet, Inc., asked an IP broker to help get their patent portfolio "in front of the right buyers" and viewed the sale to Plaintiff SpectraNet Technologies as a "milestone in [their] monetization

---

[2] SpectraNet has since emailed Defendants copies of interrogatories and document requests, which are premature, Fed. R. Civ. P. 26(d)(1), and subject to the present motion to stay. Ex. 1 and 2. (Citations to "Ex. __" refer to the exhibits attached to the Declaration of Michelle J. Zhu in Further Support of Defendants' Motion to Stay Discovery, which is filed herewith.)

process."[3] *See* Adams' Testimonial, https://tangibleip.biz/testimonials (last accessed October 16, 2026). "A stay will not diminish the monetary damages to which [SpectraNet] will be entitled if it succeeds in its infringement suit—it only delays realization of those damages." *VirtualAgility Inc. v. Salesforce.com, Inc.*, 759 F.3d 1307, 1318 (Fed. Cir. 2014). Any delay in SpectraNet's recovery of accrued damages would be properly addressed by prejudgment interest. *See AIP Acquisition LLC v. Level 3 Commc'ns, LLC*, No. 1:12-cv-00617, 2014 WL 12642000, at *3 (D. Del. Jan. 9, 2014) (finding that because plaintiff was "a licensing entity and not a direct competitor of [defendants] . . . it can be adequately remedied for any delay by money damages, including any appropriate interest accrued during the stay") (quotation omitted).[4] The delay of monetary damages is not the type of "damage" to SpectraNet that would require Defendants to make out a "clear case of hardship or inequity," as SpectraNet suggests, Stay Opp. 3, 7; otherwise that standard would apply in every case. *Richards v. Fashion Nova, LLC*, 807 F. Supp. 3d 861, 865–66 (S.D. Ind. 2025) (finding plaintiff's assertion "that a stay would prejudice him . . . by postponing relief" failed to demonstrate undue prejudice).

### 2. SpectraNet Identifies Nothing but Generic Prejudice

SpectraNet does not argue that it would suffer any substantive or procedural disadvantage from the entry of Defendants' requested stay but, instead, only handwaves at the generic prejudice attendant to every stay, which is insufficient to demonstrate undue prejudice. *See, e.g., Diatek*

[3] Plaintiff SpectraNet Technologies' ultimate parent is West U Capital, LLC, *see* Dkt. 4, which is a litigation funding firm that touts that its "capital levels the playing field." *See* West U Capital, LLC Homepage, https://www.westucapital.com (last accessed October 16, 2026).

[4] In the *Puget* case cited by SpectraNet, the court considered a motion to lift a stay that had been entered pending the resolution of *inter partes* review proceedings that had already lasted *seven* years and was expected to last *three* more. The court found that, "[w]hile it may have been the case that delay in itself was not undue prejudice had this motion occurred in the first two or three years of the IPR process, it is undue prejudice here to continue the stay in this case" and "[f]urther delay will also jeopardize any possible recovery of damages [plaintiff] seeks in this case." *Puget BioVentures, LLC v. DePuy Orthopaedics, Inc.*, No. 3:10-cv-00463, Dkt. 118 at 7 (N.D. Ind. Aug. 14, 2017). Those circumstances are not present here.

*Licensing LLC v. Estrella Media, Inc.*, No. 1:22-cv-03508, 2022 WL 5108090, at *2 (S.D.N.Y. Oct. 4, 2022) ("Plaintiff has not shown prejudice to it aside from the prejudice present in every stay that it will be delayed in prosecuting its case."); *Gamon Plus, Inc. v. Campbell Soup Co.*, No. 1:15-cv-08940, 2021 WL 9909704, at *2 (N.D. Ill. June 8, 2021) (cited by SpectraNet) ("Delay alone is not enough to tip the balance or to constitute unfair prejudice.") (citation omitted). SpectraNet's supposed concerns about the potential loss of evidence and the fading memories of witnesses are hypothetical at best. *See* Stay Opp. 5–6. SpectraNet identifies no witness, document custodian, third party, or affiliate who it has cause to believe may terminate their employment or destroy documents between now and when the Court rules on Defendants' motion to dismiss and identifies no third-party discovery that it would need to prove its infringement or damages case. *See Nat'l Police Ass'n, Inc. v. Gannett Co.*, No. 1:21-cv-01116, 2021 WL 5364207, at *3 (S.D. Ind. Oct. 25, 2021) (finding general assertions that "there is a risk that memories may fade, and documents may be inadvertently destroyed," without more, "are insufficient to justify a conclusion of undue prejudice"). SpectraNet also concedes that the parties' duties to preserve documents should sufficiently protect their data and documents during a stay. Stay Opp. 6.

The lack of prejudice to SpectraNet is further demonstrated by its decision to wait several years to assert any of the three related asserted patents, the earliest of which were granted in 2021 and 2022. Although SpectraNet insists that its delay should be measured against only the most recently issued of the three asserted patents (*i.e.*, 2025), *see* Stay Opp. 7, SpectraNet offers no reason why that makes sense or why it needed to wait until all three patents were granted before asserting any of them. If there were any losses of party or third-party data or documents, fading of witness memories, or any harm to SpectraNet from any delay in receiving any accrued damages,

they are more likely attributable to SpectraNet's delay in bringing suit rather than to a stay while the Court addresses a motion to dismiss.[5]

Because SpectraNet provides no argument or facts supporting any contention that "there is even a fair possibility that the stay will work damage to someone else," Defendants need not "make out a clear case of hardship or inequity in being required to go forward" under this factor. Stay Opp. 3 (quoting *Gamon*, 2021 WL 9909704, at *2). The *Gamon* case cited by SpectraNet concerned a court's consideration of a request to *lift* a stay that was entered pending the *inter partes* review of patents by the Patent Office, which had taken four years at that point and had resulted in most of the asserted claims being either affirmed by the Patent Office as not invalid or no longer subject to any further review or appeal. *See Gamon*, 2021 WL 9909704, at *1–2. Those circumstances are quite different from those presented here, where Defendants' motion to dismiss was only filed a few weeks ago, a far stretch from the four-year stay in *Gamon*. Regardless, the imbalance of discovery burdens here makes out such a case. *See infra* Sections II.D and II.F.

### D. SpectraNet's Belated Suggestion That It Has Been and Will Be Tactically Disadvantaged by a Stay (or Extension of Deadlines) Is Baseless and Self-Serving

In SpectraNet's opposition to Defendants' motion to extend the initial Local Patent Rules deadlines—the very deadlines that are the subject of Defendants' motion to stay—SpectraNet now suggests that it has suffered a tactical disadvantage because Defendants did not comply with early deadlines.[6] *See* Dkt. 52. That is incorrect, and SpectraNet's accusations lack merit. As an initial

---

[5] SpectraNet's unsupported assertion that the Court cannot consider its delay in bringing suit because SpectraNet brought suit within the patent-damages limitations period, Stay Opp. 8, improperly conflates the stay and laches analyses. The relevant question is whether a stay while the Court considers a motion to dismiss represents prejudice that is "undue" for a plaintiff that waited roughly four or five years to assert two of the three asserted patents. It does not.

[6] SpectraNet's opposition to Defendants' motion for an extension repeats arguments that it has made in its opposition to Defendants' motion to stay; adds to them meritless accusations concerning Defendants' supposed failures to engage in discovery; and appears to be intended to serve, at least in part, as a

matter, SpectraNet's actual opposition to Defendants' motion to stay does not raise any of these supposed abuses as tactically disadvantaging it, including Defendants' alleged failure to make initial disclosures. In fact, Defendants notified SpectraNet *in advance*—and before SpectraNet filed its opposition brief—that Defendants would not be serving initial disclosures, and they did not expect SpectraNet to serve them either. Indeed, SpectraNet offers no argument at all in its stay opposition about any tactical disadvantage it may have suffered.

SpectraNet's list of complaints in its opposition to the motion for extension is new, and it never voiced an objection or concern before now. The complaints concern commonplace early extensions as well as the parties' efforts, for the sake of efficiency and judicial economy, to have all four cases reassigned to the same judge and to align their case schedules so they would be on the same track. And SpectraNet's complaint that Defendants did not send it a draft of the Rule 26(f) report once the case management conference was continued for a month, thus moving the deadline for the report, is nonsensical.

SpectraNet's complaints about the initial disclosures are similarly new, and without merit. Any tactical disadvantage—of which there is none, given the non-substantiative nature of its disclosures—is of SpectraNet's own making. Specifically, on October 9, 2026, SpectraNet emailed Defendants copies of its intended initial disclosures despite (i) Defendants' pending motion to stay, which addressed the deadline for them; (ii) Defendants having moved, out of an abundance of caution, to extend the default Local Patent Rules deadlines while the parties brief and the Court considers Defendants' motions to dismiss and motions to stay discovery; and (iii) Defendants informing SpectraNet that they did not intend to provide disclosures or expect SpectraNet to provide its disclosures either. Any suggestion by SpectraNet that the deadline for

---

supplement to SpectraNet's previously filed opposition to Defendants' motion to stay. Accordingly, Defendants address those arguments here as well.

initial disclosures has passed would present a cramped reading of the Court's orders and the Local Patent Rules, which, among other things, would create impermissible conflicts between the federal and local rules. *See* Fed. R. Civ. P. 26(a)(1)(C); Fed. R. Civ. P. 83(a)(1). SpectraNet was not unduly prejudiced or tactically disadvantaged by its decision to send Defendants premature initial disclosures, particularly when it *knew* that Defendants were not doing so.

In any event, according to SpectraNet's initial disclosures, SpectraNet itself allegedly has no documents other than the publicly available patents and file histories and a small handful of chain-of-title documents, and it knows of no witnesses whose testimony it may rely on other than the named inventor, a patent prosecutor, SpectraNet's own CEO, and Defendants themselves. Ex. 3 at 3. And given SpectraNet's representation that, other than the provisional application, it does not have any "documents concerning the conception, reduction to practice, design, and development of each claimed invention," *id.* at 7–8, SpectraNet also appears to be taking the position that documents and information in the possession of the sole named inventor (Jeffrey Adams) and former assignee of the patents-in-suit (SpectraNet, Inc.) are not within the possession, custody, or control of Plaintiff SpectraNet Technologies.[7] SpectraNet's willingness to subject itself to and incur the expense of discovery should be given little weight, if any, given the asymmetric nature of the discovery burdens here.

### E. A Stay Will Simplify the Issues and Streamline Trial

Defendants' *Alice* motion to dismiss is case dispositive. If granted in full, it would end all four cases in one ruling. And even if only granted in part with respect to certain claims, it would narrow the cases significantly and limit needed discovery. *Buffalo Pats.*, 2022 WL 22917889,

[7] In the event the case moves forward, Defendants will likely ask for early briefing on this issue after conferring with SpectraNet to confirm whether this is its position. Defendants do not rule out the possibility that the absence of any research and development documents may be because Mr. Adams never prototyped, tested, or used his abstract, patent-ineligible idea.

at *1 (granting stay based on defendant's motion that four of the five asserted patents were patent-ineligible). SpectraNet does not and cannot dispute this. Moreover, the Supreme Court has described Section 101 patent-eligibility as a "threshold" inquiry, *Bilski*, 561 U.S. at 602, and district courts have been urged to address Section 101 issues "at the outset" of litigation to "conserve scarce judicial resources" and "provide[] a bulwark against vexatious infringement suits." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). And as the *Harper* case cited by SpectraNet acknowledged, motions to dismiss based on "*threshold*" issues are the very type that are likely to support a stay because "such a defect affirmatively demonstrates that a case can go nowhere." *See* 2020 WL 5230746, at *2 (emphasis added; quotation omitted); *see also supra* Section II.B.

Faced with these facts, SpectraNet resorts to offering a preview of what it might later argue in its opposition to Defendants' motion to dismiss and improperly invites the Court to assess the merits of that motion. While Defendants believe that the Court will ultimately grant their motion to dismiss, the Court is not tasked here with predicting how it might rule on Defendants' underlying motion. *See Kaavo Inc. v. Cognizant Tech. Sols. Corp.*, No. 1:14-cv-01192, 2015 WL 1737476, at *2 n.4 (D. Del. Apr. 9, 2015) (granting stay pending resolution of *Alice* motion to dismiss and noting that "our Court generally has not attempted to evaluate the legal merits of the proceeding or inquiry that the movant seeks a stay in favor of"); *cf. VirtualAgility*, 759 F.3d at 1313 (reversing denial of stay pending covered business method patent review, and holding that the district court erred by basing its determination of the simplification factor on an assessment of the merits of the review, albeit in part because such an assessment was contrary to the intent of the relevant statute).

Accordingly, the Court should reject SpectraNet's improper attempt to add a "likelihood of success" factor to the stay analysis. *See Richards*, 807 F. Supp. 3d at 865 (rejecting plaintiff's

argument that the standard for granting a stay "mirrors" that for a preliminary injunction; noting that plaintiff "employs the incorrect legal standard and instead focuses on whether the movant has made a strong showing of likelihood of success on the merits"); *see also Gray*, 133 F.R.D. at 40 (cited by SpectraNet) (explaining "requir[ing] the court to make a preliminary finding of the likelihood of success on the motion to dismiss . . . would circumvent the procedures for resolution of such a motion").

**F. A Stay Will Reduce the Burden of Litigation on the Parties and the Court**

A stay at this stage of the proceedings while the Court considers Defendants' motion to dismiss will undoubtedly reduce the burden on the parties and the Court. "[A] stay will certainly reduce the burden of litigation on the parties and the Court" where doing so could "avoid some of the complex and time-consuming disputes that invariably arise in patent litigation, particularly those concerning production of source code and other sensitive materials." *Mantissa Corp. v. Old Second Bancorp, Inc.*, No. 1:17-cv-09175, 2018 WL 3059604, at *8 (N.D. Ill. June 20, 2018). "Such discovery burdens are typically defendant-heavy, and to begin discovery in this case now would risk wasting time and resources" on patent-ineligible claims. *Diatek*, 2022 WL 5108090, at *2 (citation omitted).

Should the case proceed, the parties will need to serve their initial disclosures under the Federal Rules and Local Patent Rules and provide their related document productions; start preparing infringement and invalidity contentions; prepare for claim construction proceedings; and start engaging in discovery, including negotiating appropriate protective orders and ESI orders. SpectraNet has already indicated that it intends to ask for Defendants' highly confidential source code, hardware architecture, and detailed information and documents concerning Defendants'

corporate structures, affiliates, accused technology, confidential strategies, and finances.[8] All of these tasks will necessitate significant time and expenditure in the near term and will likely require Court involvement. Even if Defendants were required to make out a "clear case of hardship or inequity," Stay Opp. 3—they are not—it is clear that "Defendants would suffer hardship by being required to participate in merits-based discovery and meet the deadlines previously imposed before their [dispositive] motion is decided." *Norsworthy v. Felix*, No. 1:23-cv-01151, 2025 WL 1839919, at *3 (E.D. Cal. July 3, 2025) (considering "the hardship or inequity which a party might suffer in being required to go forward" with merits-based discovery).

SpectraNet characterizes these plainly obvious and exorbitant expenses and efforts as "generic," Stay Opp. 12, but these undertakings are required by the rules and notoriously expensive, and there is no "declaration requirement" to substantiate these expenses.[9] This Court previously granted a motion to stay pending its consideration of a motion to dismiss without any such declaration. *See Atos*, Dkt. 47.

Lastly, SpectraNet's suggestion that the burden on Defendants might be mitigated by "joint discovery planning," Stay Opp. 12, ignores that, regardless of whatever level of planning SpectraNet has in mind, Defendants will still need to respond to discovery and produce documents, hardware architecture, and source code.

---

[8] *See* Ex. 1 and 2. As discussed *supra*, note 2, SpectraNet emailed Defendants copies of its intended interrogatories and document requests.

[9] The *Harper* case that SpectraNet cites did not *require* such a declaration but, as that case suggests, Defendants have included as Exhibits 1 and 2 copies of SpectraNet's intended discovery requests so the Court is "able to review them to determine the scope and extent of same." 2020 WL 5230746, at *4 n.1.

## III. CONCLUSION

For the foregoing reasons, and those stated in Defendants' opening memorandum, the Court should stay all discovery, including the default schedule and disclosures contemplated by the Local Patent Rules, pending resolution of Defendants' motion to dismiss based on Section 101.

Dated: October 16, 2026

Respectfully submitted,


/s/ Brian Sodikoff
Brian Sodikoff
Matthew T. Messina
**KATTEN MUCHIN ROSENMAN LLP**
525 W. Monroe St.
Chicago, IL 60661
312.902.5200
brian.sodikoff@katten.com
matthew.messina@katten.com

Christopher B. Ferenc (*pro hac vice*)
**KATTEN MUCHIN ROSENMAN LLP**
1919 Pennsylvania Ave., NW, Suite 800
Washington, DC 20006
202.625.3647
christopher.ferenc@katten.com

*Attorneys for Defendants IMC-Chicago, LLC d/b/a IMC Trading; IMC Americas, Inc.; IMC Global Holdings LLC; RCA Telecom LLC; and Toggle Communications LLC*

/s/ Steven J. Horowitz
Steven J. Horowitz
shorowitz@sidley.com
**SIDLEY AUSTIN LLP**
One South Dearborn
Chicago, IL 60603
Telephone: 312.853.7000

Brian A. Rosenthal (*pro hac vice*)
brosenthal@gibsondunn.com
Benjamin Hershkowitz (*pro hac vice*)
bhershkowitz@gibsondunn.com
Alena Farber (*pro hac vice*)
afarber@gibsondunn.com
Michelle J. Zhu (*pro hac vice*)
mzhu@gibsondunn.com
Talus Iorio-Ronek (*pro hac vice*)
tiorio-ronek@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
200 Park Avenue
New York, NY 10166-0193
Telephone: 212.351.4000

Facsimile: 212.351.4035

Ting-Wei Chiang (*pro hac vice*)
atchiang@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
1700 M Street, N.W.
Washington, D.C. 20036-4504
Telephone: 202.955.8500
Facsimile: 202.831.6106

Al Suarez (*pro hac vice*)
asuarez@gibsondunn.com
Julia Tabat
jtabat@gibsondunn.com
**GIBSON, DUNN & CRUTCHER LLP**
2001 Ross Avenue, Suite 2100
Dallas, TX 75201-2923
Telephone: 214.698.3100

*Attorneys for Defendants Optiver Services B.V. and County Information Services, LLC*

*<u>/s/ William E. Devitt</u>*
William E. Devitt
Matthew J. Hertko
Ruth Brindel
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: wdevitt@jonesday.com
mhertko@jonesday.com
rbrindel@jonesday.com

John R. O'Donnell (*pro hac vice*)
**JONES DAY**
555 S. Flower St.
Los Angeles, CA 90071
Telephone: (213) 243-2155
Facsimile: (213) 243-2539
Email: jodonnell@jonesday.com

*Attorneys for Defendants Jump Financial, LLC; Jump Trading Holdings, LLC; Jump Trading, LLC; and World Class Wireless, LLC*

*/s/ Catherine Nyarady*
Catherine Nyarady (*pro hac vice*)
Thomas Macchio (*pro hac vice*)
Stephanie L. Chin (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Tel.: 212.373.3000
cnyarady@paulweiss.com
tmacchio@paulweiss.com
schin@paulweiss.com

David E. Cole (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Tel.: 202.223.7300
dcole@paulweiss.com

William J. Cadigan
**AKIN GUMP STRAUSS HAUER & FELD LLP**
190 S. LaSalle Street, Suite 2800
Chicago, IL 60603
Tel.: 312.276.0400
wcadigan@akingump.com
IL Attorney Reg. No.: 6211964

Cono A. Carrano (*pro hac vice*)
**AKIN GUMP STRAUSS HAUER & FELD LLP**
2001 K Street, NW
Washington, DC 20006
Tel.: 202.887.4000
ccarrano@akingump.com

*Attorneys for Defendant Virtu Financial, Inc.*

*/s/ William E. Devitt*
William E. Devitt
Matthew J. Hertko
Ruth Brindel
**JONES DAY**
110 N. Wacker Drive, Suite 4800
Chicago, IL 60606
Telephone: (312) 782-3939
Facsimile: (312) 782-8585
Email: wdevitt@jonesday.com
mhertko@jonesday.com
rbrindel@jonesday.com

John R. O'Donnell (*pro hac vice*)
**JONES DAY**
555 S. Flower St.
Los Angeles, CA 90071
Telephone: (213) 243-2155
Facsimile: (213) 243-2539
Email: jodonnell@jonesday.com

Catherine Nyarady (*pro hac vice*)
Thomas Macchio (*pro hac vice*)
Stephanie L. Chin (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
1285 Avenue of the Americas
New York, NY 10019
Tel.: 212.373.3000
cnyarady@paulweiss.com
tmacchio@paulweiss.com
schin@paulweiss.com

David E. Cole (*pro hac vice*)
**PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP**
2001 K Street, NW
Washington, DC 20006
Tel.: 202.223.7300
dcole@paulweiss.com

*Attorneys for Defendants New Line Networks LLC and 10Band LLC*

*/s/ Adam P. Samansky*
Jeremy S. Goldkind
**VENABLE LLP**
227 West Monroe Street, Suite 1900
Chicago, IL 60606
312.210.1522
jsgoldkind@Venable.com

Adam P. Samansky (*pro hac vice*)
**MINTZ, LEVIN, COHN, FERRIS, GLOVSKY AND POPEO, P.C.**
One Financial Center
Boston, MA 02111
617.348.1819
APSamansky@mintz.com

*Attorneys for Defendants Raft Technologies Ltd. and 3DB Communication Inc.*